Betty MOORE, Appellant,

v.

GENERAL MOTORS CORPORATION,
Appellee.

No. 83–1295.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1983.

Decided June 29, 1984.

Rehearing and Rehearing En Banc Denied Aug. 17, 1984.

the resolution of the estoppel claim.

Lawrence O. Willbrand, P.C., St. Louis, Mo., for appellant.

James E. McDaniel, John W. Sunnen, Robert C. Tucker, Lashly, Caruthers, Baer & Hamel, A Professional Corp., St. Louis, Mo., for appellee, General Motors Corp.; Elmer W. Johnson, Gen. Counsel, Francis

S. Jaworski, General Motors Corp., Detroit, Mich., of counsel.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HUNTER, Senior District Judge.*

JOHN R. GIBSON, Circuit Judge.

Betty Moore appeals from dismissal for lack of jurisdiction of her claim against General Motors Corporation based on negligent misrepresentation and fraud. She was a laid-off employee of the General Motors Plant in St. Louis and was offered employment at a new plant in Bowling Green, Kentucky. Her instructions to report to work at Bowling Green on September 8, 1981, were withdrawn, but in the meantime she had sold her house in St. Louis, bought another in Bowling Green, and as a result of damages resulting from these transactions, brought the action against General Motors. On appeal she argues that her claims under state law for fraud and misrepresentation are not preempted by national labor law. We affirm the judgment of the district court.[1]

Moore brought this action against General Motors claiming breach of contract and negligence in its actions concerning her transfer to the Bowling Green plant. Moore contends that the provisions of the Collective Bargaining Agreement dealing with transfer to a new plant created a duty to conduct such transfer with due care.

She alleges that in order to report for work at the new plant, she sold her home in St. Louis at a $10,000 loss and its contents at a $2,500 loss, and contracted to buy a house in Bowling Green. However, when she reported for work on September 8, 1981, there was no work for her at the Bowling Green plant.

The case was set for trial and GM renewed its motion for summary judgment and to dismiss,[2] arguing that the court was without subject matter jurisdiction because plaintiff's claims arose in the context of the employment relationship and were governed by the Collective Bargaining Agreement. Therefore the claims asserted would be preempted by national labor law and policy. Moore then filed an amended complaint re-alleging the claims of negligent misrepresentation and adding a count based on fraud which alleged that GM falsely represented to Moore that she would be employed on a second shift in the Bowling Green Plant at a time when they knew there would not yet be a second shift.

The affidavits filed in support of the motion for summary judgment claim that the transfer of Corvette production from St. Louis to Bowling Green was a transfer of major operations within the meaning of the labor contract, and that GM and the Union[3] had entered into a Memorandum of Understanding which allowed St. Louis plant employees to be eligible to apply for transfer to the Bowling Green Plant.[4] The

---

\* The Honorable Elmo B. Hunter, Senior District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri, heard the case pursuant to 28 U.S.C. § 636(c) (1982).

2. GM had previously filed a motion for summary judgment on the ground that Moore was asserting a claim for breach of a contract that provided for a grievance and arbitration procedure which she had not exhausted. The district court denied the motion, holding that Moore's complaint stated a claim of negligent misrepresentation rather than a claim for breach of contract.

3. "Union" refers to the International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America of which Betty Moore is a member.

4. Paragraph 96 of the Collective Bargaining Agreement states:

When there is a transfer of major operations between plants, the case may be presented to the Corporation and, after investigation, it will be reviewed with the International Union in an effort to negotiate an equitable solution, in accordance with the principles set forth in the previous paragraph. Any transfer of employees resulting from this review shall be on the basis that such employees are transferred with full seniority except as the parties may otherwise mutually agree.

The paragraph goes on to provide for a relocation allowance for employees whose seniority is transferred between plants.

Memorandum of Understanding between GM and the Union provided that the Collective Bargaining Agreement applied to the Bowling Green plant, provided for the application of various procedures, including grievance procedures, and specified the application procedures to be followed by St. Louis employees.

GM had sought applications from both active and laid-off employees of the St. Louis Plant, and on October 24, 1980, had received Betty Moore's application for transfer to Bowling Green. Moore had been laid off for 18 months. On June 30, 1981, a letter was sent to Moore offering her employment at Bowling Green, and on July 2, 1981, she signed acceptance of the letter and delivered it to the employment office in St. Louis. She reported for a physical examination on July 29, 1981, and on that date was told to report to Bowling Green on September 8, 1981, at 7:30 a.m.

On July 23, 1981, GM delayed its decision concerning whether to add a second shift until its August meeting. On August 18, 1981, the GM production scheduling committee met and determined that the second shift production at Bowling Green should be postponed. The following day a mailgram was sent to Moore informing her that the second shift production at Bowling Green would be postponed until January 1, 1982, and that she should not report to work on September 8. A return receipt for the mailgram was signed by Moore August 25, 1982. Moore was eventually notified to report to Bowling Green on June 7, 1982, and at her request this date was postponed until June 14 when she commenced work at Bowling Green. Moore received $1,240.00 in relocation benefits as provided under the Collective Bargaining Agreement.

In ruling on the Motion to Reconsider, the Magistrate pointed out that Moore, although given specific leave to amend her complaint to allege a claim under 29 U.S.C. § 185(a) (1982) for breach of the Collective Bargaining Agreement, did not make that amendment and did not allege compliance with the requirements of the Collective Bargaining Agreement in regard to the grievance procedure set forth in the Agreement. The Magistrate pointed to the broad scope of the Collective Bargaining Agreement [5] which provided that the ultimate grievance procedure decision is final and binding on the Union, its members, the employee and the employer. The Magistrate held that the grievance procedure was mandatory and that Moore had failed to exhaust those procedures. He concluded that state law must yield to the application of national labor law and, accordingly, the court was without jurisdiction to consider the common law claims.

Moore asserts that her claims are not preempted. While her right to insist on an available job being offered to her was federally protected, she claims that the negligence or fraud in doing so in the fashion alleged should not be protected. She relies upon *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), in which a trespass by union pickets was found not to be preempted by federal labor laws, and *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), in which a claim for intentional outrageous conduct was allowed under state laws. She further argues that her claim of malicious fraud is similar to the malicious libel claim in *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), which was held to be a matter of peripheral concern only.

---

5. Paragraph 28 of the Collective Bargaining Agreement provides:

> Any employee having a grievance, or one designated member of a group having a grievance should first take the grievance up with the foreman who will attempt to adjust it. Paragraph 55 of the Agreement provides:

> Any issue involving the interpretation and/or the application of any term of this Agreement may be initiated by either party directly with the other party. Upon failure of the parties to agree with respect to the correct interpretation or application of the Agreement to the issue, it may then be appealed directly to the Umpire as provided in paragraph (43).

■ The Magistrate correctly ruled that federal labor law preempts. When state law is invoked to regulate activities which are the subject of a collective bargaining agreement, the national labor policy requires that state law yield to the application of national labor law. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243–45, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959). The principle of preemption in the national labor field operates to delimit state and federal judicial authority over labor disputes in order to avoid conflict between the exertion of judicial and administrative power, thereby providing for uniformity and stability in the resolution of labor relations conflicts. *Amalgamated Association of Motor Coach Employees v. Lockridge*, 403 U.S. 274, 286, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473 (1971).

To achieve uniform federal regulation, Congress enacted the National Labor Relations Act, 29 U.S.C. § 151 et seq., intending to replace inconsistent state laws with a uniform national labor policy.[6] In *Garmon* the Supreme Court set forth the guidelines to be followed in applying federal labor law preemption. The Supreme Court held that state jurisdiction must yield to the primary jurisdiction of the National Labor Relations Board when conduct is arguably or potentially subject to the National Labor Relations Act, either as protected activity under section 157 or an unfair labor practice under section 158. If conduct is potentially subject to the National Labor Relations Act, state regulation is precluded regardless of the remedies sought.

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act [29 U.S.C. § 157], or constitute an unfair labor practice under § 8 [29 U.S.C. § 158], due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the states have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8, or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board.

359 U.S. at 244–45, 79 S.Ct. at 779 (footnotes omitted).

The conduct of GM about which Moore complains is within the compass of activities that states may not regulate. "Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme." *Garmon*, 359 U.S. at 247, 79 S.Ct. at 780. Moore's complaint essentially arises from an employment contract between her and GM that was entered into pursuant to an agreement between GM and the Union. The conduct of GM in relation to a matter of employment is arguably protected or prohibited by sections 157 and 158.

■ As set out in *Garmon*, there are two exceptions to the federal preemption doctrine: (1) conduct that is merely a peripheral concern of the Labor Management Relations Act, 29 U.S.C. § 141 et seq., and (2) conduct that touches interests deeply

---

6. S.Rep. No. 573, 74th Cong., 1st Sess. 15 (1935).

rooted in local feeling and responsibility. Moore argues that GM's conduct falls within these exceptions. In making her argument, Moore relies on three United States Supreme Court cases. *Farmer,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338, and *Linn,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 are both state tort law cases in which the Supreme Court found that the state's special interest in protecting the health and safety of its citizens and preserving public order was sufficiently compelling to merit exception from federal preemption.

■ The decision to preempt federal and state court jurisdiction over a given class of cases depends on the nature of the particular interest being asserted and the effect of concurrent judicial and administrative remedies upon the administration of national labor policies. *Vaca v. Sipes,* 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). The Supreme Court has refused to apply the preemption doctrine in cases involving violent tortious activity. *International Union, United Automobile Workers v. Russell,* 356 U.S. 634, 640, 78 S.Ct. 932, 935, 2 L.Ed.2d 1030 (1958).

> [S]tate court actions to redress injuries caused by violence or threats of violence are consistent with effective administration of the federal scheme: Such actions can be adjudicated without regard to the merits of the underlying labor controversy.

*Farmer,* 430 U.S. at 299–300, 97 S.Ct. at 1063. *See also Russell,* 356 U.S. at 649, 78 S.Ct. at 941 (Warren, C.J., dissenting). Unlike the conduct complained of in *Russell* (threats of violence), *Linn* (malicious libel), and *Farmer* (intentional infliction of emotional distress), Moore's complaint does not involve outrageous or violent conduct, and the damages which Moore alleges she suffered were at least partially a result of her personal reaction to the transfer. The tortious conduct alleged to have been committed in this case involves Moore's right of transfer to the new plant in Bowling Green. This right evolves from the Collective Bargaining Agreement and the Memorandum of Understanding between the Un-

ion and GM, which is governed by federal law, not state tort law.

The subject matter of Moore's amended complaint is not "merely peripheral" to the labor dispute out of which this case arises. The entire nature of the controversy arises from a transfer that was provided for generally in the Collective Bargaining Agreement, and specifically, in the Memorandum of Understanding between the Union and GM. Moore's claim that it was GM's failure to make the transfer with due care only confirms the inseparable relationship between the transfer and the Collective Bargaining Agreement.

Moore's reliance on *Sears, supra,* is also misplaced. The Court decided not to apply the federal preemption doctrine in *Sears* because if applied in that particular situation, the employer would have been denied access to any forum in which to litigate the disputed conduct. 436 U.S. at 206–07, 98 S.Ct. at 1762–63. Such is not the case here.

■ Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), union members may bring an action in the federal district court for breach of a collective bargaining agreement even where the conduct alleged was arguably protected or prohibited by the National Labor Relations Act. *Lockridge,* 403 U.S. at 298–99, 91 S.Ct. at 1923–24. Although given leave to amend her complaint to state a claim under the Collective Bargaining Agreement, Moore did not do so, but rather filed an additional claim alleging common law fraud. Moore has attempted to characterize her claims as a tort action rather than a violation of the Collective Bargaining Agreement; however, we agree with the district court's conclusion that the rights on which Moore bases her claims arise from the Collective Bargaining Agreement.

■ All rights and claims arising from a collective bargaining agreement in an industry affecting interstate commerce are governed by federal law. State law does not exist as an independent source of private rights to enforce collective bargaining contracts. *Local 174, Teamsters v. Lucas*

*Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). That the application of federal preemption cannot be avoided by attempts to allege only state contract or tort theories was recently made clear in a Third Circuit case in which the Court stated:

> [S]ection 301(a) ... reaches not only suits *on* labor contracts, but suits seeking remedies *for violation* of such contracts.... The issue is not the nature of the remedy sought for the alleged violation, but whether the remedy sought may require that the court from which it is sought, ... interpret a collective bargaining agreement.... All suits for violation of collective bargaining agreements are governed by federal law, because Congress intended that the scope of obligation in labor contracts in or affecting interstate commerce be uniform.

*Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120,* 647 F.2d 372, 380 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) (emphasis in original) (citations omitted).

█ The Collective Bargaining Agreement from which Moore's transfer rights arise, requires that Moore resort to the grievance procedures set forth in the Agreement. As the Magistrate noted, Moore has never alleged compliance with those procedures. Failure to exhaust the grievance procedures of the collective bargaining agreement is a defense to a suit on the collective bargaining agreement. *Hines v. Anchor Motor Freight Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. at 184, 87 S.Ct. at 913. An action for state common law claims will not be allowed against an employer where the employee has failed to proceed with the remedies provided in the collective bargaining agreement.

█ Moore's action is preempted by federal labor law. Therefore, we hold that the court was without subject matter jurisdiction and properly dismissed her action. The judgment of the district court is affirmed.

FAGG, Circuit Judge, dissenting.

The national labor policy considerations which underlie the cases cited by the court do not support the result it has reached. I do not believe that federal labor law gives GM license fraudulently to injure an employee with impunity from the control of state tort law.

Almost four weeks after Moore accepted GM's offer of employment, GM falsely represented the date when she was to start work, a starting date known by it to be false. In reliance upon GM's representation Moore sold one home at a sacrifice and lost her down payment on another. GM's conduct is not free from the application of state law. States have a deeply rooted interest in protecting their citizens from fraudulent conduct and, unlike the federal scheme, state remedies have been designed to compensate for the kind of economic loss suffered by Moore.

I would hold GM answerable under state tort law. An action brought under state law by an employee to redress loss caused by the employer's false representation will not interfere with the effective administration of the national labor policy. The doctrine of preemption is not applicable here. I would reverse.