Kathy ANDERSON, Sue Bydzovsky, Mike Disanto, Jim Donaldson, Randy A. Engel, Janet Frost, Carolyn Gillispie, Denise Gomez, Nancy Haider, Tommy Haines, Dean Hedberg, Clyde Hughes, Ann Labelle, Scott Maki, Dan Matykiewicz, Robin McCloskey, Jeff McFarland, Liz McFarland, Jean McNally, Ken McNamara, Audry Moen, Janet Murphy, Stephen Nelson, Lorna Olsen, Mark Olsen, Terry Pendersen, Bessie Poole, Barbara Pratt, Tony Quevedo, D.J. Rierson, Terri Savage, Betty Simms, Jeffrey Sorenson, Dennis Stordah, Keith W. Swan, Tom Sypnieski, Bruce Griffith, James Koshenina, James Wenzel, Sandra Moshier, Appellants,

v.

FORD MOTOR COMPANY, United Auto Workers International Union, Appellees.

No. 85–5370.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1986.
Decided Oct. 23, 1986.

Roderick Macpherson, Minneapolis, Minn., for appellants.

Robert Hobbins, Minneapolis, Minn., for Ford Motor Co.

Michael B. Nicholson, Detroit, Mich., for United Auto Workers.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Appellants seek review of a final order entered in the District Court for the District of Minnesota dismissing their state law claims against Ford Motor Company (Ford) and the United Auto Workers International Union (UAW or union) as preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (§ 301).[1] For reversal appellants argue the district court erred in dismissing their state law claims because (1) the source of the rights they assert is independent of the collective bargaining agreement between Ford and the UAW and adjudication of their state law claims would not require an interpretation of the terms of that agreement, and (2) preemption is inappropriate because the application of state law in this case would not interfere with the federal scheme favoring collective bargaining. For the reasons discussed below, we reverse the judgment of the district court and remand for further proceedings.

During the summer of 1983, Ford scheduled a production increase to begin in December 1983 at its Twin Cities assembly plant located in St. Paul, Minnesota. To meet the labor demands of the projected increase, Ford needed to hire approximately 250 additional production employees at the plant. By agreement with the UAW, Ford was required to offer these available jobs to company employees on a preferential hiring list. This list consisted of the names of laid-off Ford employees throughout the country whose plants had either been shut down or who were on indefinite layoff. Ford began to offer employment at the Twin Cities plant to preferentially placed applicants in October 1983. Ford also contacted appellants and offered them employment. Appellants were former Ford employees who had been laid off during 1980, but whose recall rights had expired due to the length of time they had been on layoff. Appellants were employed as new hires under the collective bargaining agreement between Ford and the UAW and were subject to a 90–day probationary period. Before the end of the probationary period, in February 1984, appellants were

---

**1.** The district court did not explain the basis of its order to dismiss. Federal preemption, however, is the only basis that would have led to dismissal of appellants' entire lawsuit.

"bumped" from their jobs by employees from the preferential hiring list.

Appellants brought this action in state court alleging, *inter alia*, state law claims of fraud, breach of a verbal contract of employment, breach of the covenant of good faith and fair dealing, wrongful discharge, promissory estoppel, and negligence. There was no allegation that Ford had violated the collective bargaining agreement. According to the complaint, Ford represented to appellants when they were hired that they were being taken on as permanent employees of the company. As former Ford employees, appellants were familiar with the preferential hiring list and they claim that they sought and received repeated assurances from Ford that they would not be "bumped" by preferential hirees. Appellants contend Ford told them that the preferential hiring list had been exhausted, that they would not be replaced by preferential hirees, and that they would be laid off only if there was an economic downturn. Appellants allege that Ford reiterated these assurances during the new hire orientation. Appellants speculate that Ford was not able to meet its hiring needs for the proposed production increase in sufficient time through the preferential hiring list, and therefore hired appellants to fill the short term work requirement until replacement employees from the preferential list could be hired.

Appellants sought relief in the form of reinstatement, backpay, accrued benefits, specific performance of the contract for permanent employment, consequential damages, damages for emotional distress, and punitive damages. After commencement of the action, appellants joined the UAW as a defendant for the purpose of obtaining a complete remedy pursuant to Fed.R.Civ.P. 19.[2] Ford had the case removed to the federal district court.[3]

Ford and the UAW moved for summary judgment on two occasions based upon federal preemption. The district court denied the first motion. Appellants then voluntarily withdrew the wrongful discharge claim. In their second motion for summary judgment, Ford and the UAW argued that appellants' state law claims were preempted by federal labor law and by failure to exhaust the grievance procedure contained in the collective bargaining agreement between Ford and the union. The district court granted the motion and this appeal followed.

The sole issue before us in this appeal is whether appellants' state law claims are preempted by federal labor law.[4] Where federal and state law conflict in the area of labor relations, or where local regulation would frustrate the federal labor law scheme, federal law preempts state law. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189, 55 L.Ed.2d 43 (1978). Federal labor policy favors collective bargaining between labor and management. Uniformity in the interpretation of collective bargaining agreements is considered essential to the federal scheme favoring collective bargaining. *See Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). Such uniformity is assured by application of the preemption doctrine under § 301.[5]

---

**2.** Appellants have no claim against the UAW, but because their request for reinstatement would affect the plant seniority system, the UAW was joined to protect the interest of those union members whose seniority and employment may be affected.

**3.** The basis for federal jurisdiction was diversity jurisdiction. Ford also alleged federal question jurisdiction, which appellants do not concede.

**4.** The parties agree the primary issue in this appeal is federal preemption and have limited briefing accordingly, reserving other issues pending resolution of the federal law issue.

**5.** Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined [by the Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

"Substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Id.* Thus, if state law purports to define the meaning of the contract relationship under a collective bargaining agreement, state law will be preempted in deference to § 301. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985) *(Lueck).* Conversely, however, state rules that proscribe conduct or establish rights and obligations independent of a labor contract are outside the preemptive scope of § 301. *Id.* It is against this background that we consider appellants' contentions.

■ The parties agree, and we concur, that the controlling authority on the issue of preemption in this case is *Lueck.* In *Lueck,* the United States Supreme Court set out the standard for determining when § 301 preempts a plaintiff's state law claim. The Court held that when resolution of a state law claim is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," preemption is required. *Id.* at 1916. Among the factors relevant to the determination of whether a state law claim meets the "substantially dependent" standard is whether the claim derives from or is implied from contract rights established under a collective bargaining agreement, and whether evaluation of the claim is "inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 1912.

In *Lueck,* an employee covered by a collective bargaining agreement that granted disability insurance benefits and established specific procedures for processing disability claims brought a tort claim in Wisconsin state court alleging his employer had handled his disability insurance claim in bad faith. *Id.* at 1907–08. To determine if the employee's claim was preempted by § 301, the Court analyzed the nature of the Wisconsin tort rule prohibiting bad faith handling of insurance claims. The Court

first found that under Wisconsin common law, no employer is obligated to provide disability insurance benefits to its employees. The source of that obligation, and of Lueck's corresponding right to these benefits, was the collective bargaining agreement. *Id.* at 1914–15. Next, the Court noted that, under Wisconsin law, the obligation to handle claims for insurance benefits in good faith was a duty implied from the insurance contract between the parties. In Lueck's case, the insurance contract was the collective bargaining agreement. *Id.* at 1914. Finally, the Court found that the standard for determining whether the employer had violated the common law duty to handle claims in good faith would be derived in part from the procedures for handling claims established by the terms of the collective bargaining agreement. The definition of "good faith" required for evaluation of the state tort claim would thus depend on the understanding of the parties concerning the meaning of the collective bargaining agreement. *Id.* at 1914–15.

The Court concluded that the actual source of the rights and obligations Lueck sought to enforce was the collective bargaining agreement and not state law. *Id.* at 1914. Further, the Court found that evaluation of Lueck's state tort claim was "tightly bound with questions of contract interpretation" regarding the collective bargaining agreement. *Id.* Hence, the Court concluded, Lueck's state law claim must be left to federal law under § 301. *Id.*

In the present case, appellants argue that their state law claims do not derive from the collective bargaining agreement between Ford and the UAW, but originate solely in Minnesota common law. Further, they contend, resolution of their state law claims would not require interpretation of the terms of the collective bargaining agreement. They urge, therefore, that their case can be distinguished from *Lueck.* Ford and the UAW counter that resolution of appellants' employment-related claims would require extensive analysis of the terms of both the preferential hiring and collective bargaining agreements. Fur-

ther, Ford and the UAW insist that the proper avenue for resolution of appellants' claims is through the grievance procedure in the collective bargaining agreement, and they argue that federal labor policy favoring resolution of labor disputes by arbitration and grievance procedures would be frustrated if these state law claims are not preempted.

We agree with appellants that the facts of the present case mandate a different result on the issue of preemption than that reached in *Lueck.* We find support for making this distinction in *Lueck;* there, the Supreme Court directed that the determination of whether preemption is required must be made on a case-by-case basis. *Id.* at 1911. The Court further emphasized that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* A careful consideration of appellants' claims demonstrates that the rights and obligations they assert do not derive from the collective bargaining agreement, and that evaluation of these claims will not require extensive interpretation of the terms of the labor agreement.

■ We consider first appellants' state law claim of fraudulent misrepresentation. Fraud is a common law tort action deeply rooted in local standards of individual and social responsibility. *See generally* W. Prosser & W.P. Keeton, Prosser and Keeton on Torts § 105 (5th ed.1984). Unlike the tort claim for bad faith handling of an insurance claim considered in *Lueck,* a claim of fraud does not derive from nor depend upon an underlying contract. Under Minnesota law, proof of fraud does not depend on the existence of any contractual

relationship, nor do the standards for judging fraudulent misconduct derive from any contractually-established expectations of the parties. *See Davis v. Re-Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967), *citing Hanson v. Ford Motor Co.,* 278 F.2d 586, 591 (8th Cir.1960) (elements of cause of action for fraud under Minnesota law).

A plaintiff may not, of course, avoid preemption simply by relabeling as "fraud" a claim that is, in essence, a claim for violation of a collective bargaining agreement. *Lueck,* 105 S.Ct. at 1911. Such was the case in *Bell v. Gas Service Co.,* 778 F.2d 512 (8th Cir.1985) (*Bell* ). In *Bell,* a discharged employee brought a state law claim alleging fraudulent misrepresentation against her former employer. She claimed the employer fraudulently induced her to accept a promotion to a position for which she was not qualified. She also claimed she was wrongfully discharged from this new position rather than demoted, as was provided for in the collective bargaining agreement under which she worked at all relevant times. *Id.* at 513–14, 517. In examining the substance of Bell's fraud claim, we determined that the claim turned on a dispute over contractually-established job procedures. Bell's claim, we concluded, "[arose] from contract rights" and we therefore held that preemption was appropriate. *Id.* at 517–18.[6] *Cf. Hillard v. Dobelman,* 774 F.2d 886 (8th Cir.1985) (ex-employee's claim of tortious interference of contract preempted under *Lueck* ).

■ We next consider appellants' contractual and quasi-contractual claims. We find it significant that these claims are based on representations Ford allegedly

6. This court also decided in favor of preemption in *Moore v. General Motors Corp.,* 739 F.2d 311 (8th Cir.1984) (*Moore*), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985). Moore, an employee of General Motors on layoff status, brought a state law claim against the company alleging fraudulent misrepresentation. Moore alleged the company offered her work at a plant in another state if she would transfer, a right provided her under the General Motors collective bargaining agreement. When she arrived at the new plant, however, no job was

available. *Id.* at 313–14. In *Moore,* it was clear that the state law claim at issue was inextricably intertwined with the collective bargaining agreement. General Motors was obligated to offer Moore the transfer because of the agreement and the procedures governing her transfer were part of the terms of that contract. Moore's cause of action, therefore, was not independent of the collective bargaining agreement, but was "substantially dependent" on its terms. Ford's reliance on *Moore* in its argument for preemption in the present case is misplaced.

made before the time appellants became employees of the company, that is, before the time they were even covered by the collective bargaining agreement. Appellants are seeking to establish hiring contracts created by Ford's alleged offers of permanent-status employment separate from the collective bargaining agreement.[7] It is clear that appellants' contractual and quasi-contractual claims do not originate in, nor refer in any substantial way to, the rights and duties established in the collective bargaining agreement.

Appellants' contract claims closely resemble those considered in *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (*Belknap*). In *Belknap*, an employer offered permanent work to strike-breakers and then entered into a settlement with the union that called for replacement of the strike-breakers by striking employees. *Id.* at 493–97, 103 S.Ct. at 3174–76. The Supreme Court allowed the strike-breakers to bring state law claims of misrepresentation and breach of contract to enforce the promise of permanent-status employment notwithstanding the employer's claim that such state law causes of action were preempted by federal labor law. *Id.* at 500. The Court acknowledged that the employer had the right under federal labor law to hire permanent replacements for striking employees, but wrote, "it surely does not follow that the employer's otherwise valid promises of permanent employment are nullified by federal law and its otherwise actionable misrepresentations may not be pursued." *Id.* By the same token, we do not think that because Ford had the right to displace appellants

under the terms of the collective bargaining agreement, the company also had the right to either misrepresent to appellants the terms and conditions of employment or to avoid contractual or quasi-contractual obligations based on pre-employment promises.

Faced with facts somewhat like those before us today, *Bale v. General Telephone Co.*, 795 F.2d 775 (9th Cir.1986) (*Bale*), the Ninth Circuit reached a different result on the issue of preemption. In *Bale*, state law claims of fraud, negligent misrepresentation and breach of contract were brought by discharged employees against their former employer after they were "bumped" from their jobs to make room for employees on a preferential hiring list created by a collective bargaining agreement.[8] Plaintiffs' state law claims arose from alleged pre-employment promises and representations regarding the permanency of employment. In holding the state law claims preempted as "substantially dependent" on the collective bargaining agreement, the *Bale* court reasoned that:

adjudication of [plaintiffs'] state tort claims would require reference to, and interpretation of, the terms of the collective bargaining agreement. In order to prove their fraud and negligent misrepresentation claims, [plaintiffs] would be required to show that the terms of the collective bargaining agreement differed significantly from the individual employment contracts they believed they had made.

*Id.* at 780. Our analysis above of the source of the torts of fraud and negligent misrepresentation satisfies us that these

---

7. Ford and the UAW contend that the United States Supreme Court's decision in *J.I. Case Co. v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944) (*Case*), prohibits such pre-employment hiring agreements. This misstates the holding of *Case*. Under *Case*, Ford could not, in an effort to avoid the collective bargaining agreement, enter into individual contracts with appellants setting out the terms and conditions of employment. The collective bargaining agreement supersedes individual employment contracts. *Id.* at 336, 339, 64 S.Ct. at 579, 581. Nonetheless, the Supreme Court recognized in *Case* that an individual hiring agreement, the scope of which is separate and distinct from a

collective bargaining agreement, can create legally enforceable rights and obligations. *Id.*

8. A significant fact distinguishing *Bale v. General Tel. Co.*, 795 F.2d 775 (9th Cir.1986) (*Bale*), from the present case is that the plaintiffs in *Bale* also brought a § 301 claim concurrent with their state law claims. The court in *Bale* relied in part on this concurrent federal claim to hold the state law claims preempted, stating "[plaintiffs'] state tort claims are preempted by section 301 since they 'arose out of the same acts and conduct which formed the basis of' their section 301 claims." *Id.* at 780 (citation omitted).

claims arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement. Thus we do not agree with the court in *Bale* that adjudication of these state law claims requires any significant reference to the terms of the collective bargaining agreement. Our analysis is supported by *Malia v. RCA Corp.*, 794 F.2d 909 (3d Cir.1986), where it was held that an employee's state law tort claims, which arose from alleged representations by his employer that he could elect to return to his former position if he was not satisfied with a promotion, were not dependent on and did not interfere with a collective bargaining agreement. *Id.* at 913. Thus, the claims were held not preempted by § 301 under the *Lueck* standard. *Id.*

Ford and the UAW finally argue that preemption of appellants' state law claims is mandated by federal labor policy favoring settlement of labor disputes through grievance procedures and arbitration. In *Lueck*, the Supreme Court stated that the necessity "to preserve the central role of arbitration" was among the reasons for preemption of a state law tort claim. 105 S.Ct. at 1915. While we agree that federal labor policy favors resolution of disputes among parties to collective bargaining agreements through contractual grievance procedures or arbitration, *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), this policy does not require parties to submit to arbitration in a matter not covered by the collective bargaining agreement. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Morello v. Federal Barge Lines, Inc.*, 746 F.2d 1347, 1350 (8th Cir. 1984). Appellants seek to hold Ford liable for actions that allegedly occurred before the time when appellants were parties to the collective bargaining agreement and we have concluded their claims against the company based on these actions are not within the scope of that agreement. Given these facts, appellants cannot be compelled to use the contract grievance procedure to settle their dispute with Ford.

In summary, we find appellants' state law claims are not "substantially dependent" upon the collective bargaining agreement between Ford and the UAW and that appellants' claims against Ford are not subject to the grievance procedures of that agreement. For these reasons, we conclude the district court erred in dismissing appellants' state law claims as preempted by § 301. We reverse the judgment of the district court and order the cause remanded for further proceedings.

Reversed and remanded for further proceedings.

BRIGHT, Senior Circuit Judge, dissenting.

The majority gives *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), a crabbed reading. It nakedly accepts appellants' allegations that their disputes with Ford are separate from the collective bargaining agreement notwithstanding that it is impossible to find fraud without examining Ford's obligations under the collective bargaining agreement. Thus, the majority reaches a result completely out of step with the preemption doctrine central to federal labor law. I, therefore, dissent.

As in *Lueck*, our analysis must focus on whether appellants' state law claims for fraudulent misrepresentation and breach of contract confer "non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the * * * claim[s] is inextricably intertwined with consideration of the terms of the labor contract. If the state * * * law purports to define the meaning of the contract relationship, that law is preempted." *Id.* at 1912. Contrary to the majority's opinion, resolution of appellants' claims substantially depends upon analysis of the collective bargaining agreement, and therefore section 301 of the LMRA preempts their claims.

It is undisputed that, upon hire, appellants became members of the collective

bargaining unit covered by the labor contract. Furthermore, Ford had a contractual obligation to offer available jobs at the St. Paul plant to company employees on the preferential hiring list. This interplant job opportunity program rests upon the seniority provisions of the basic labor contract. After hiring appellants, Ford became obligated to comply with the contractual provision requiring it to recall employees on the preferential hiring list who possessed existing seniority, which appellants did not possess. Thus in discharging appellants, Ford claims it merely relied on its agreement with the Union as it was obliged to do.

This court must now decide whether appellants' claims, characterized as state contract and tort claims, are preempted by federal labor law in light of Ford's obvious defense that its conduct complied with a valid labor contract. In *Lueck*, the Supreme Court recognized the potential for this contract-tort "characterization game"[1] observing that because "nearly any alleged willful breach of contract can be restated as a tort claim * * * the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims." *Lueck*, 105 S.Ct. at 1915.

The majority concludes that the rights and obligations appellants assert do not derive from the collective bargaining agreement. Rather, appellants' claims arise from prehire agreements with Ford which are separate from and independent of the collective bargaining agreement. This suggests that by virtue of the alleged pre-employment agreements with Ford, appellants acquired an employment status different from that of Ford employees who, unlike appellants, retained their seniority rights. Under this analysis, employees in the position of appellants might also sue Ford for breach of these prehire agreements, if appellants had served their probationary period, achieved permanent status, and had then been laid off according to their seniority under the collective bargaining agreement. This would turn the preemption doctrine on its head.

However, the Supreme Court has ruled that the collective bargaining agreement supersedes individual employment contracts. *J.I. Case Co. v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). Individual employment contracts may not be used to limit or condition the terms of the labor contracts. *Id.* at 336–39, 64 S.Ct. at 579–81. Thus, just as Ford and appellants are not free to make individual agreements that appellants will work for a rate of pay less than that guaranteed by the labor contract, they may not strike a prehire agreement for guaranteed permanent employment which conflicts with the collective bargaining agreement.

Further, the majority, by dismissing the Ninth Circuit's analysis in *Bale v. General Telephone Co.*, 795 F.2d 775 (9th Cir.1986), has unnecessarily created a conflict in the circuits. It attempts to distinguish *Bale* by the fact that the plaintiffs in *Bale* brought a section 301 claim concurrent with their state law claims. This is "a distinction without a difference" for appellants here have expressly waived the section 301 claims they had.

In this case, as in *Bale*, there is no way to measure the misrepresentations alleged without examining that which has been misrepresented; here, the collective bargaining agreement. The majority ignores the various contentions of Ford that the alleged misrepresentations were not quoted in full or accurately or were taken out of context. There is simply no way around the inextricable meshing of the collective bargaining agreement and appellants' claims.

In addition, appellants' claims are not analogous to those asserted in *Belknap v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), as contended by the majority. In *Belknap*, the Supreme Court recognized the right of strikebreakers to bring a state cause of action for breach of contract against their employer in part because the strikebreakers were not covered

---

1. For a discussion of these characterizations in tort actions brought by unionized employees *see* FitzGibbon Kinyon & Rohlik, "Deflouring Lucas Through Labored Characterizations: Tort Actions of Unionized Employees," 30 St. Louis U.L.J. 1, 23 (1985).

by the collective bargaining agreement and therefore had no remedy in the grievance machinery of the labor contract. *See id.* at 507, 103 S.Ct. at 3181. Here, appellants were covered by the collective bargaining agreement, had access to the grievance machinery, and, in fact, filed a grievance contesting their lay-offs which contained allegations similar to those pressed here.

This court has previously recognized that "application of federal preemption cannot be avoided by attempts to allege only state contract or tort theories * * *." *Moore v. General Motors Corp.*, 739 F.2d 311, 317 (8th Cir.1984). Here, appellants' asserted rights and Ford's alleged duty arise from the collective bargaining agreement and evaluation of appellants' state law claims substantially depends upon interpretation of that collective bargaining agreement. *Lueck*, 105 S.Ct. at 1914–15. Accordingly, I believe the district court acted correctly in applying the doctrine of preemption as a basis for dismissing the action by these Ford employees.