**Mary R. WELLS, et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

Civ. A. Nos. J86–0337(L) to J86–0367(L) and J86–0381(L).

United States District Court, S.D. Mississippi, Jackson Division.

July 21, 1988.

Richard C. Roberts, Edward J. Currie, Jr., Steen, Reynolds, Dalehite & Currie, Jackson, Miss., for plaintiffs.

Paul O. Miller, III, W. Thomas Siler, Jr., Miller, Millam, Moeller, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant General Motors Corporation (GM) to dismiss or, alternatively, for partial summary judgment. Plaintiffs timely responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties. The thirty-two plaintiffs in this cause, all former employees of GM's Packard Electric Division at its Clinton, Mississippi plant, brought this action charging that GM induced them by fraudulent and/or negligent misrepresentations to terminate their employment with GM.[1] Plaintiffs purport to seek remedies based on alleged violations of state tort law by defendant. GM, though, contends that plaintiffs' claims are in fact collective bargaining disputes concerning employee benefits which plaintiffs have attempted to characterize as state law tort claims to avoid the consequences of federal labor law. Defendant has therefore moved for summary judgment alleging that plaintiffs' state law claims are preempted by Section 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(5), by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and by section 514(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144(a). In essence, what defendant seeks is a dismissal of this action in favor of the jurisdiction of the National Labor Relations Board (NLRB), but in the event the court determines that dismissal is not warranted, defendant requests a determi-

---

1. Each of the thirty-two plaintiffs filed a separate complaint in May of 1986. Their cases were consolidated by orders of this court dated January 16, 1987 and February 6, 1987, respectively.

nation that federal labor law, and not state tort law, is applicable.

## THE FACTS

Packard Electric is a division of GM which performs the final assembly of wiring harnesses for use in GM automobiles. Packard's divisional headquarters is located in Warren, Ohio. At all times relevant to this action, Packard operated a number of plants in Warren, as well as three plants in Clinton, Mississippi, and one in Brookhaven, Mississippi. Packard employees are represented by the International Union of Electrical, Radio and Machine Workers, AFL–CIO (IUE), and each of the local plants, including the one in Clinton, is represented by a local affiliate of IUE. Packard's Clinton employees, and in particular these plaintiffs, were represented by Local 698.

In the early 1980s, the domestic automobile industry experienced a severe downturn. GM and Packard became less competitive and as a consequence, between January and March 1982, several hundred employees at the Clinton plant, including plaintiffs, were laid off. Because GM believed that prospects for improvement were bleak, in early 1982, Packard Warren developed a "plan to compete" for implementation in Warren. As part of this plan, the Warren JOBS Committee[2] developed and instituted an "incentive attrition" plan, known as the Voluntary Termination of Employment Plan (VTEP or the Plan), which permitted employees to sell their seniority back to the company and terminate their employment in exchange for monetary payment.

After the VTEP was implemented in Warren, Ohio, the Clinton JOBS Committee began to consider adoption of a VTEP. After numerous meetings between the bargaining committees of Local 698 and of GM management for the purpose of negotiating the terms of a VTEP, the bargaining committees sent a proposed VTEP Memorandum of Understanding incorporating the terms agreed upon to the Packard Clinton JOBS Committee for approval. In early November, the JOBS Committee recommended that the proposed VTEP be offered to Packard Clinton employees and on December 17, 1982, the members of the bargaining team executed a final VTEP Memorandum of Understanding which set the terms of the Plan.

Management met with Packard Clinton employees, including the laid-off employees, in early January 1983 to present the Plan and answer employees' questions. According to plaintiffs, it was represented to the employees that prospects for future work increase at Packard were bleak and that, although by accepting VTEP employees would be giving up their right to be rehired or recalled, should work increase and new jobs materialize, ex-employees would be eligible for future employment. Because the prospect of being recalled from their lay-off was not very promising, each of the plaintiffs ultimately chose to accept the VTEP option and received payments ranging from $10,000 to $22,000, depending on their years of seniority.

## THE CLAIMS

Plaintiffs state that they understood that by accepting the plan for termination, they were relinquishing all of their seniority and losing all rights attendant to that seniority. They claim, however, that GM misrepresented to them, either fraudulently or negligently, that while they were giving up their rights of seniority, they would still be eligible for future employment with the company just as would any other applicant for employment with GM. However, in 1985, when Packard for the first time since plaintiffs' acceptance of VTEP, began hiring new employees, it refused to consider plaintiffs for employment, stating that any former employee who accepted the termination plan offered by GM was not eligible for employment with Packard. Plaintiffs assert that at no time had they understood that their acceptance of the Plan rendered

---

**2.** The JOBS Committee was a joint union-management committee designed to develop joint solutions to business problems.

them ineligible for re-employment with GM, and that only when GM began hiring in 1985 did plaintiffs learn of GM's position that they were ineligible for employment. Plaintiffs claim that had they known at the time the termination plan was offered to them, acceptance of the Plan would render them ineligible for future employment at GM's plants, they would not have agreed to termination and would have remained in the employ of defendant.

## THE DEFENSES

GM has raised three separate preemption defenses. The first is predicated upon section 8(a)(5) of the NLRA, 29 U.S.C. § 158, which grants exclusive jurisdiction to the NLRB over any claim of unfair labor practices. The second arises from section 301 of the LMRA, 29 U.S.C. § 185, which has been held to preempt state law claims where resolution of the claims requires the interpretation of a collective bargaining agreement. The third is based on ERISA, 29 U.S.C. § 1144, which preempts state law as it relates to an employee benefit plan. Plaintiffs deny that any of defendant's preemption defenses are available and claim that they are entitled to pursue their state law remedies.

NLRA

■ The initial preemption defense raised by GM is that section 8(a)(5) of the NLRA preempts the plaintiffs' putative state law claims. Unlike defendant's other preemption defense, this defense calls into question the court's subject matter jurisdiction. That is, it raises the issue of whether this court has subject matter jurisdiction or whether the NLRB is vested with exclusive jurisdiction pursuant to the NLRA. Under the NLRA, Congress created the National Labor Relations Board and granted it the power to "prevent any person from engaging in any unfair labor practice ... affecting commerce." 29 U.S.C. § 160; *see also* 29 U.S.C. §§ 153, 158 and 159. As interpreted, the NLRB enjoys exclusive jurisdiction over any conduct that is "arguably protected" or "arguably prohibited" by the NLRA. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct.

773, 3 L.Ed.2d 775 (1959). Defendant GM, as the party claiming preemption, has the burden to demonstrate that the conduct complained of by plaintiffs is arguably protected or arguably prohibited. *Id.* As the Supreme Court recently explained,

[i]f the word "arguably" is to mean anything, it must mean that the party claiming preemption is required to demonstrate that his case is one that the Board could legally decide in his favor. That is, the party asserting preemption must advance an interpretation of the Act that is not plainly contrary to its language and has not been "authoritatively rejected" by the courts or the Board. ... The party must then put forth enough evidence to enable the court to find that the Board reasonably cannot try the claim based on such an interpretation.

*International Longshoremen v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986).

GM contends that VTEP was a mandatory subject of bargaining and as such, GM was required under federal labor law to bargain with the union in good faith before implementing the Plan. Included within its good faith bargaining obligation is the duty to provide adequate information about the subject at issue so that the negotiation process can function properly. *See NLRB v. Truitt Manufacturing Co.,* 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956); *Serrano v. Jones & Laughlin Steel Co.,* 790 F.2d 1279 (6th Cir.1986). GM submits that during the negotiating process over the VTEP, its negotiating team clearly informed the union's bargaining committee that employees who accepted VTEP benefits would not be considered for rehire if GM's financial picture ever improved. Plaintiffs, however, argue that even if the issue of eligibility for rehire had been discussed during the course of negotiations, the plaintiffs' right to seek future employment with the company was never an issue in the bargaining process and was neither discussed nor included in the VTEP. According to plaintiffs, the conduct at issue in the case at bar was not the subject of bargaining, was not a term of the VTEP, and was not part of the underlying collective bargaining agree-

ment; the conduct, they claim, is GM's having made fraudulent representations to individual employees, wholly apart from any aspect of the collective bargaining process, in an attempt to prevail upon individual employees to apply for and accept the benefits of VTEP.

GM reasons that if, as it contends, the VTEP was a mandatory subject of bargaining, and if GM bargained with the union in good faith, then the NLRB could legally decide that GM met its NLRA obligations and that its conduct was therefore protected. If, on the other hand, it were determined that defendant did not negotiate over VTEP in good faith, by failing to disclose its true intentions regarding rehire rights or otherwise misleading the union or GM employees, then GM's actions could be held to be in violation of the NLRA and plaintiffs could obtain relief.

GM further points out that once VTEP was negotiated, it was prohibited from bypassing the union and dealing with the employees regarding rehire rights under VTEP. Accordingly, defendant further reasons that if it made the misrepresentations claimed by plaintiffs to have been made, its conduct could be held to be arguably prohibited since good faith bargaining regarding mandatory subjects of bargaining

> means the employer may not as to this subject deal with its employees individually, or unilaterally, and disregard their bargaining agent. And this of course means that after the employer has bargained with the Union about such benefits, and signed a.... contract ..., it may not thereafter deal with its employees individually, or unilaterally, without the approval of their bargaining agent.

*In re A.S. Abell Co.*, 230 N.L.R.B. 17 (1977), *aff'd sub nom., NLRB v. Baltimore News American Division*, 590 F.2d 554, 556 (4th Cir.1979).

The court accepts, at least for the sake of argument, that VTEP was in fact a mandatory subject of bargaining.[3] Payment to employees for relinquishment of their employment and rights attendant to that employment whose employment is governed by a collective bargaining agreement is in some respects similar to severance pay or pension benefits which have been held to be a mandatory subject of bargaining. *See Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *In re Armour and Co.*, 280 NLRB 96 (1986). In the case at bar, there is no dispute that there was bargaining concerning the terms of the Plan. It does not follow, however, that every conceivable matter which might have been included within VTEP must be characterized as a mandatory subject of bargaining. The fact that the matter at issue here, eligibility for future employment, in retrospect could have been and perhaps should have been included within such a termination plan does not render that topic *a fortiori* a mandatory subject of bargaining. In the court's view, the right to eligibility for future employment is not a subject which necessarily required union/management bargaining. Moreover, the alleged misrepresentations concerning plaintiffs' future eligibility for employment, according to plaintiffs' allegations, were not made to employees on an individual basis in an attempt to bargain with employees individually. Rather, they were made, if at all, to the group of employees inquiring concerning VTEP. According to plaintiffs' allegations, the representatives were made simply to induce individual employees to accept the payments made available under the previously negotiated Plan. At that time, the Plan itself had been formally adopted and the alleged misrepresentations were not made during any bargaining process.

In sum, the court is of the opinion that the defendant has failed to sustain its burden to establish the applicability of preemption under section 8(a)(5) of the NLRA. Accordingly, this court enjoys subject matter jurisdiction over plaintiffs' claims.

### *Section 301 of the LMRA*

■ Although the court concludes that plaintiffs' claims are not preempted by the

---

3. A "mandatory" subject of bargaining is any matter "with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d).

NLRA, there remains the more difficult issue of whether plaintiffs' claims are preempted by section 301 of the LMRA. Section 301 provides a jurisdictional basis in federal courts for

> (s)uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in [the LMRA] or between any such labor organizations.

Section 301 was and is intended to govern disputes between parties to collective bargaining agreements. The mere fact, however, that parties to a particular dispute have a collective bargaining agreement does not mean that their dispute will always fall within the coverage of section 301. Rather, the dispute must relate to the parties' agreement.

In determining whether plaintiffs' claims are preempted by section 301, the court's inquiry is guided by the Supreme Court's opinion in *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), which set forth a framework for analysis of section 301 preemption issues. The *Allis–Chalmers* Court held that an employee's tort suit alleging bad faith handling of an insurance claim was preempted by section 301 since the alleged state law tort arose from an alleged violation of the terms of a collective bargaining agreement and resolution of the claim would thus have required interpretation of that agreement. The actual source of the rights and obligations which Lueck sought to enforce was not state law but rather was the collective bargaining agreement, which provided both the basis for the benefits and the right to have payment made in a timely manner.

The Court observed that the preemptive effect of section 301 extends beyond suits alleging contract violations, stating that

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, *whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.*

*Id.* at 211, 105 S.Ct. at 1911 (emphasis supplied). Recognizing that the preemptive scope of section 301 does not encompass state law rules which prescribe conduct or establish rights and obligations independent of a labor contract, the Court observed that

> [not] ... every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301. The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis. [But] *when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal-contract law.*

*Id.* at 220, 105 S.Ct. at 1916 (citations omitted) (emphasis supplied). Thus, plaintiffs' claims are preempted if "evaluation of their tort claim[s] is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is preempted." *Id.* at 214, 105 S.Ct. at 1913. Consequently, plaintiffs can avoid preemption only if their claims can be said to be independent of the collective bargaining agreement in the sense that resolution of their claims does not substantially depend upon interpretation or construction of the collective bargaining agreement, for

> if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law is pre-empted and federal labor-law principles ... must be employed to resolve the dispute.

*Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, ——, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988).

The cases in which section 301 preemption issues have been treated under the

analysis provided in *Allis–Chalmers* have revealed little consistency and often appear conflicting. For example, in *Bale v. General Telephone Co. of California*, 795 F.2d 775 (9th Cir.1986), former employees of General Telephone alleged that the defendant had misrepresented to them at the time of hiring that they would serve as temporary employees for six months after which they would become regular employees. After six months on the job, and as a result of union pressure, plaintiffs were terminated because under the terms of their collective bargaining agreement, a temporary employee's term could not exceed six months. The court concluded that plaintiffs' state law tort claims of fraud and negligent misrepresentation were preempted under section 301, reasoning that

> [in] order to prove their fraud and negligent misrepresentation claims, [plaintiffs] would be required to show that the terms of the collective bargaining agreement differed significantly from the individual employment contracts they believed they had made. Resolution of their state tort claims is therefore "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract."

*Bale*, 795 F.2d at 780 (quoting *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1915). A contrary result was reached in *Anderson v. Ford Motor Co.*, 803 F.2d 953 (8th Cir. 1986), a case in which "bumped" employees of Ford alleged that at the time of hiring, Ford had assured them they would not be "bumped" from their job by persons on a preferential hiring list. Addressing plaintiffs' claim of fraudulent misrepresentation, the court concluded that it was not preempted.

> Fraud is a common law action deeply rooted in local standards of individual and social responsibility.... Unlike the tort claim for bad faith handling of an insurance claim considered in *Lueck*, a claim of fraud does not derive from nor depend upon an underlying contract.

Under Minnesota law, proof of fraud does not depend on the existence of any contractual relationship, nor do the standards for judging fraudulent misconduct derive from any contractually established expectations of the parties.

*Anderson*, 803 F.2d 953.

Both plaintiffs and defendant acknowledge that the key issue on this motion is whether resolution of plaintiffs' claims require an interpretation of the VTEP. The parties, at the time plaintiffs accepted the VTEP, were covered by a master collective bargaining agreement and the VTEP itself was a supplemental agreement which resulted from bargaining between union and management. Plaintiffs assert, though, that their complaints relate not to the agreement itself but to entirely separate conduct by defendant in fraudulently inducing them to accept the Plan. Thus, they claim that resolution of their claim is not "substantially dependent" upon an analysis of the terms of the agreement between the parties, but can be resolved independently of the agreement.

Under the collective bargaining agreement in effect at the time the VTEP was developed by the bargaining committees and later accepted by plaintiffs, laid-off employees enjoyed rehire rights or recall rights for five to seven years, depending on seniority. That is, GM was obligated to rehire its laid-off employees, including plaintiffs, for a period of at least five years if work became available.[4] Under the VTEP, it was provided that

> [a]n employe [sic] who was issued and accepts a VTEP payment shall cease to be an employe [sic] and shall have seniority cancelled at any and all of the Company's plants and locations....

The VTEP further cited that

> [i]f a former employe [sic] is again employed by the Division after he has received a VTEP, no repayment (except with respect to an overpayment) of the VTEP shall be required or allowed; and

---

**4.** The length of time during which an individual employee was entitled to recall was determined by reference to his seniority status.

no seniority previously cancelled shall be reinstated.

According to plaintiffs, they understood that acceptance of VTEP entailed termination of their "rehire" rights thereby making them ineligible for rehire or recall. But they did not consider termination of their rehire rights to render them ineligible for any future employment with GM. Accordingly, plaintiffs assert that the fact that rehire rights may have been discussed and may have been included to some degree in the VTEP does not affect their claims since future eligibility for employment was not a matter bargained over and was not included within the VTEP.

Defendant asserts that although there is some evidence in the record that some form of rehire rights was discussed in bargaining over the VTEP, and while there is some language in the VTEP itself which could be construed as touching upon rehire rights, rehire rights were not negotiated into the VTEP. Nevertheless, defendant reasons that there must be a determination of whether rehire rights in any form were negotiated into the VTEP, and if so, whether the representations allegedly made to employees were consistent with what was in the VTEP, or whether the representations instead amounted to misstatements; this in turn implicates the VTEP itself and requires that the court construe the terms of the Plan to determine whether the representations, if made, were correct or were misstatements.

It is noteworthy that neither side has taken the position that eligibility for future employment was included in the VTEP nor does it appear they could do so. Although the term "rehire rights" has been bandied about in connection with this motion, neither party has been able to seriously contend that that phrase is synonymous with future eligibility for employment. Thus, even if rehire rights were discussed and included in a sense in the VTEP, a matter which both parties deny, that would not resolve this dispute. Hence, resolution of plaintiffs' dispute is not inextricably intertwined with interpretation of the meaning of the VTEP. Rather, it appears that the issues raised by plaintiffs' claims are purely factual questions [which] [pertain] to the conduct of the employee and the conduct and motivation of the employer. Neither of [these] [requires] the court to interpret any term of a collective-bargaining agreement.

*Lingle*, 486 U.S. at ——, 108 S.Ct. at 1883. Moreover, the right of the employees which was allegedly violated, the right to be free from fraud, derives not from any agreement between the parties but from state law. It is a right which exists independently of and does not depend upon the underlying contract. *See Anderson*, 803 F.2d at 957; *see also Berkline Corp. v. Bank of Mississippi*, 453 So.2d 699, 702 (Miss.1984) (award of damages based on misrepresentation is notion running deep in our law). The mere fact that this substantive right is advanced in an employment context does not require preemption. "[T]here is nothing novel about recognizing that substantive rights in a labor relations context can exist without interpreting collective-bargaining agreements." *Lingle*, 486 U.S. at ——, 108 S.Ct. at ——. In the case at bar, the court, after careful consideration of the issue, finds that no interpretation of the parties' collective bargaining agreement or VTEP is required. Hence, the court is of the opinion that section 301 preemption is inapplicable.

### ERISA

■ The defendant's preemption argument based on ERISA is not persuasive. ERISA preemption, while concededly broad, applies only to an employee benefit "plan." 29 U.S.C. § 1144. Under ERISA, an employee benefit plan is "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or an employee organization" and which provides certain benefits. 29 U.S.C. § 1002(1). In the case at bar, the fact that the termination agreement between plaintiffs and the defendant concerned an employee benefit and was termed a "plan" does not make it a benefit plan for purposes of ERISA. *See Fort Halifax Packing Company, Inc. v. Coyne*, 482 U.S. 1, 6, 107 S.Ct. 2211, 2215, 96

L.Ed.2d 1 (1987) (ERISA's preemption provision does refer to state laws relating to "employee benefits" but to those relating to employee benefit *"plans"*). In the *Fort Halifax* case, the Supreme Court concluded that ERISA did not preempt a state law providing a one-time severance benefit to employees in the event of a plant closing.

ERISA preemption encompasses only those plans which are "established or ... maintained for the purpose of providing its participants or their beneficiaries" those benefits listed under the Act. 29 U.S.C. § 1002(1). In the present case, it is clear that the purpose of GM in instituting VTEP was not to provide its employees with benefits under the Act but was instead to reduce its work force because of the poor conditions of the industry and of GM. And, in the court's view, the termination plan adopted by GM was not such a plan as envisioned by ERISA. Most of the payments to employees were made on a single payment basis and were made solely for the purpose of employee attrition. The court simply does not view the VTEP as coming within the meaning of a "plan" for ERISA purposes. This is consistent with the Supreme Court's decision in *Fort Halifax*.

In conclusion, the court is of the opinion that defendant's motion for summary judgment is not well taken and should be denied. Accordingly, this court has jurisdiction to entertain this matter.

Accordingly, it is ordered that defendant's motion for summary judgment is denied.

ORDERED.