801 F.2d 246
 120 L.R.R.M. (BNA) 2185, 123 L.R.R.M. (BNA) 2759,
41 Empl. Prac. Dec. P 36,664,
105 Lab.Cas. P 12,051
 Roger A. MARTIN; John L. Wyse; Garold Leroy Burke; James
P. Danford; Frank Williams; Fred M. Hull; Al
Tucker; Jack T. Boll; Mark Allen
LaRocca, Plaintiffs-Appellants,
v.
ASSOCIATED TRUCK LINES, INC.; Local No. 20, Teamsters,
Chauffeurs, Warehousemen and Helpers of America,
Defendants-Appellees.
 No. 85-3897.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 1, 1986.
Decided Sept. 17, 1986.
 
 Michael N. Vaporis, Toledo, Ohio, Gordon Senerius (argued), for plaintiffs-appellants.
 Jeffrey Julius (argued), Gallon, Kalniz, Iorio, Toledo, Ohio, F.R. Damm (argued), Damm & Smith, Detroit, Mich., for defendants-appellees.
 Before KEITH and GUY, Circuit Judges, and BALLANTINE, District judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiffs, employees of Associated Truck Lines, Inc. (ATL), appeal the district court's denial of their motion to amend their complaint to include state common law claims for negligent and intentional misrepresentations. The court refused the amendment based upon a finding that the state law claims would be preempted by Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. Since we agree that the claims are prempted by Sec. 301, we find that the court did not abuse its discretion in denying the motion to amend and we affirm.
 
 
 2
 Plaintiffs' original complaint in this action alleged a hybrid Sec. 301 action against ATL and Teamsters Local 20; age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq.; and age discrimination, in violation of state law, Ohio Rev. Code Sec. 4112.02. The factual basis for the claims is as follows. In March, 1983, ATL developed a comprehensive plan for consolidating its operations throughout the midwest. One aspect of the plan called for a substantial reduction of ATL's workforce at its terminal in Toledo, Ohio, where all of the plaintiffs worked. The collective bargaining agreement between ATL and the Teamsters required that before ATL could implement such a change of operations, ATL must obtain approval of the Change of Operations Committee--a committee composed equally of management and union representatives. The Committee had no authority to prohibit a change of operations but, rather, its duty was to assure that a change of operations complied with the terms of the collective bargaining agreement. The collective bargaining agreement contained a number of provisions with respect to effectuating a change of operations, including provisions for redomiciling affected employees, laying off and calling back employees, and structuring seniority. See National Master Freight Agreement, 1982-1985, Article 8, Section 6. (App. 21-24.)
 
 
 3
 Plaintiffs' complaint alleges that in the spring of 1983 ATL informed them of its plan to substantially reduce its work force in Toledo, and that since their jobs would be eliminated they would be transferred or redomiciled. Teamsters Local 20 then notified plaintiffs that they would be receiving new positions in Sandusky or Findlay, Ohio, or Detroit, Michigan. Plaintiffs alleged that the Union warned them that if they did not choose to redomicile they would be considered "voluntary quits" and would lose unemployment benefits and seniority. Along with their complaint, plaintiffs attached a letter from the director of labor relations at ATL confirming an agreement between the Union and ATL that any employee who redomiciles in Detroit will have first refusal rights to any jobs subsequently available in Toledo, Defiance, or Findlay, Ohio. Plaintiffs finally alleged in their complaint that although business has picked up in Toledo, ATL has not honored their right to return as set forth in the letter and the collective bargaining agreement. Plaintiffs therefore claimed in their complaint that ATL breached the collective bargaining agreement and the letter agreement by failing to recall them, and the Union breached its duty of fair representation by improperly processing their grievances with respect to this matter.
 
 
 4
 Before any substantial discovery had occurred, plaintiffs filed a motion to amend their complaint. The proposed amendments sought to delete the age discrimination claims and insert an Ohio common law claim for intentional or negligent misrepresentation. With respect to the Ohio tort claims, the amended complaint alleged:
 
 
 5
 13. Due to the intentional or negligent misrepresentations by the Defendants (that unless Plaintiffs redomiciled they would be considered a voluntary quit and would not receive unemployment compensation), the Plaintiffs reluctantly redomiciled. Had the misrepresentations not been made Plaintiffs would not have redomiciled, but would have been "laid off" at Toledo. Being laid off at Toledo would have required their employer to recall them prior to hiring new employees. And in fact new employees were hired, or laid off employees with less seniority than Plaintiffs were recalled, to the terminal in Toledo.
 
 
 6
 14. Due to the misrepresentations by the Defendants, Plaintiffs have been damaged, in violation of the laws of the State of Ohio, by having to commute substantial distances to work, and receiving less compensation than had they remained in Toledo.
 
 
 7
 The district court granted plaintiffs' motion insofar as it sought to delete the age discrimination claims. The court, however, refused to allow the amendment adding the misrepresentation claims. The court found these claims to be preempted by federal law:
 
 
 8
 It is clear from the face of the proposed amended complaint that the claims predicated on Ohio law (third cause of action) are based on the same set of facts. The federal and state claims are intertwined. If the conduct that a state seeks to make the basis of liability is arguably prohibited by the NLRA, otherwise applicable state law is ordinarily preempted. Operating Engineers Local 926 v. Jones, [460 U.S. 669], 103 S.Ct. 1453 [75 L.Ed.2d 368] (1983). Here the same conduct of the defendants is the basis of the plaintiffs' three causes of action: their state claims, their claim that the employer had breached the collective bargaining agreement, and their claim that the Union breached its duty of fair representation. The Court finds that the proposed state claim is subject to the doctrine of federal preemption which dictates that this case be decided exclusively by the applicable federal labor law. See Davis Co. v. United Furniture Workers, (libel law of Tennessee preempted by federal labor law) 674 F.2d 557 (6th Cir.1982), cert. denied 459 U.S. 968 [103 S.Ct. 296, 74 L.Ed.2d 279]; Fristoe v. Reynolds Metal Co., 615 F.2d 1209 (9th Cir.1980); Williams v. Pacific Maritime Assn., 421 F.2d 1287 (9th Cir.1970); Avco Corp. v. Aero Lodge No. 735 IAM, 376 F.2d 337 (6th Cir.1967), aff'd 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126], reh'g denied 391 U.S. 929 [88 S.Ct. 1801, 20 L.Ed.2d 670] (1968).
 
 I.
 
 9
 The first issue on appeal concerns our standard of review of the district court denial of the proposed amended complaint. Federal Rule of Civil Procedure 15(a) states in relevant part:
 
 
 10
 Otherwise a party may amend its pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.
 
 
 11
 As defendant ATL correctly points out, the decision as to when "justice requires" an amendment is within the discretion of the trial judge, and we review the decision under an abuse of discretion standard. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1970). In addition, it is well settled law that the district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss. Neighborhood Development Corp. v. Advisory Council on Historic Preservation, 632 F.2d 21, 23 (6th Cir.1980). However, when a district court bases its decision solely on a legal conclusion that the amended pleading would not withstand a motion to dismiss, this court must review the legal conclusion de novo. Whether an abuse of discretion occurred in such a case depends in whole upon the correctness of the district court's predicate legal conclusion. Therefore, in this case we must review the district court's conclusion that plaintiffs' state law claims are preempted by federal law de novo. If the district court's conclusion was proper, we must find no abuse of discretion.
 
 II.
 
 12
 Section 301 of the LMRA vests jurisdiction in the federal courts for suits claiming a breach of a collective bargaining agreement. 29 U.S.C. Sec. 185(a). Two months after the district court denied plaintiffs' motion to amend the complaint, the United States Supreme Court issued its decision in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), analyzing at length the preemptive effect of Sec. 301 on state tort claims. We find this case highly instructive.
 
 
 13
 In Lueck, the Court considered whether a state law tort for the bad faith handling of an insurance claim was preempted by Sec. 301 where a plaintiff is subject to a collective bargaining agreement. In finding the tort preempted, the Court stressed the policies of a unified federal labor policy and the importance of the arbitration process. The Court noted:
 
 
 14
 If the policies that animate Sec. 301 are to be given proper range, however, the pre-emptive effect of Sec. 301 must extend beyond suits alleging contract violations.... The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.
 
 
 15
 Id., 105 S.Ct. at 1911. Our analysis, therefore, must focus on "whether evaluation of the tort claim [asserted here] is inextricably intertwined with consideration of the terms of the labor contract." Id. at 1912.
 
 
 16
 It is clear from the face of plaintiffs' proposed amended complaint that an evaluation of the misrepresentation claim alleged would require consideration of the terms of the collective bargaining agreement--particularly Article 8, Section 6 of the Agreement which deals specifically with changes of operations. Plaintiffs allege that the Union misrepresented to them that if they refused to redomicile each would be considered a "voluntary quit," when in actuality if they refused to redomicile each would be considered "laid off" at Toledo, and would have been recalled based upon their seniority. The merits of this allegation certainly depend upon an interpretation of the bargaining agreement. The terms "laid off" and "voluntary quit" would have to be interpreted in light of the collective bargaining agreement, and the bargaining agreement deals specifically with the recall rights of employees "laid off" as a result of a change in operations. Since plaintiffs' misrepresentation claims are intertwined with the terms of the collective bargaining agreement, they are preempted by Sec. 301.
 
 
 17
 Plaintiffs assert that the trial court erred in failing to analyze this issue in the context of the preemption doctrine established by the Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and its progeny. See, e.g., Belknap, Inc. v. Hale, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983); Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). Garmon basically requires a balancing of federal and state interests to determine preemption based upon the primary jurisdiction of the National Labor Relations Board. The Garmon preemption doctrine is not relevant to Sec. 301 preemption. As the Court explained in Lueck:
 
 
 18
 In addressing only the question of the necessity of protecting the Board's jurisdiction, the [trial] court "confuse[d] preemption which is based on actual federal protection of the conduct at issue from that which is based on the primary jurisdiction of the National Labor Relations Board." Brown v. Hotel & Restaurant Employees & Bartenders, 468 U.S. , at 502, 104 S.Ct. [3179], at 3186 [82 L.Ed.2d 373]. So called Garmon preemption involves protecting the primary jurisdiction of the NLRB, and requires a balancing of state and federal interests. The present tort suit would allow the State to provide a rule of decision where Congress has mandated that federal law should govern. In this situation the balancing of state and federal interests required by Garmon pre-emption is irrelevant, since Congress, acting within its power under the Commerce Clause, has provided that Federal law must prevail.
 
 
 19
 Lueck, 105 S.Ct. at 1912-13, n. 9. The district court correctly declined to analyze this case under the Garmon preemption doctrine.
 
 
 20
 Finally, although each case must be analyzed in light of the specific facts presented, we note that other courts have similarly found fraud and misrepresentation claims preempted by Sec. 301. Bell v. Gas Service Co., 778 F.2d 512 (8th Cir.1985) (employee's claim that her employer fraudulently induced her to accept an assignment which she could not perform is preempted by Sec. 301); Moore v. General Motors Corp., 739 F.2d 311 (8th Cir.1984) (employee fraud and misrepresentation claim alleging that she sold her home and moved in reliance upon her employer's promise of employment in different city is preempted by Sec. 301); contra, Gray v. Local 714, 778 F.2d 1087 (5th Cir.1985) (without mentioning Lueck, court found employee's claim that he was fraudulently induced to move was not preempted by Sec. 301).
 
 
 21
 The district court did not abuse its discretion in denying plaintiffs' motion to amend, and we AFFIRM.
 
 
 
 *
 Honorable Thomas A. Ballantine, Jr., United States District Court, Western District of Kentucky, sitting by designation