907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edwin C. MANZER, Plaintiff-Appellant,
v.
DIAMOND SHAMROCK CHEMICALS COMPANY, Defendant-Appellee.
 No. 89-6315.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1990.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Edwin C. Manzer appeals the district court's summary judgment granted in favor of defendant-appellee Diamond Shamrock Chemicals Company ("Diamond Shamrock")[1] in this action alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-34 ("ADEA") and Kentucky law, with pendent claims for wrongful discharge. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 A.
 
 2
 Plaintiff began this action in Kentucky state court on January 4, 1984, alleging age discrimination in violation of state law, and Diamond Shamrock removed the case to federal district court on January 27, 1984, on the basis of diversity.
 
 
 3
 Approximately a month later, plaintiff attempted to depose J.L. Jackson, President of Diamond Shamrock Corporation in Lexington, Kentucky, but learned that Jackson, as president of the parent corporation, resided and maintained his office in Dallas, Texas. Plaintiff agreed to cancel the deposition, and Diamond Shamrock agreed to furnish plaintiff with possible dates when Jackson planned to be in Lexington. The discovery deadline eventually passed without Jackson's being deposed.
 
 
 4
 On July 6, 1984, plaintiff deposed J.W. McConnell, the man who had terminated him. During that deposition, Diamond Shamrock agreed to furnish employment records for "Diamond Shamrock Chemicals Company" normally provided to government agencies such as the EEOC, if they were available. Later, Diamond Shamrock limited its production of documents to those concerning persons employed by the coal unit. On July 18, 1984, plaintiff filed a formal request for the production of the additional documents.
 
 
 5
 On August 14, 1984, plaintiff amended his original complaint to add an ADEA discrimination claim plus a claim for wrongful discharge. On the same date, the district court issued a scheduling order, without consulting the parties or their counsel, setting a discovery deadline of October 12, 1984. The next day, August 15, 1984, Diamond Shamrock filed a motion for summary judgment.
 
 
 6
 Diamond Shamrock objected to plaintiff's request for production of documents, and on August 29, 1984, plaintiff filed a motion to modify the scheduling order and a motion to compel production of the documents. Before the discovery deadline ran, plaintiff deposed McConnell, Robert Garbesi and two other supervisors. Though plaintiff did not directly respond to the summary judgment motion, on September 14, 1984, he filed a motion under Federal Rule of Civil Procedure 56(f) asking the court to deny the motion for summary judgment because of inadequate discovery. In the alternative, he asked for a continuance. Plaintiff argued that he should be allowed to pursue discovery, "particularly of the age records of defendant's employees."
 
 
 7
 On September 19, 1984, plaintiff sought leave to file a second amended complaint adding an allegation that he was wrongfully discharged for refusal to violate the Sherman Antitrust Act, 15 U.S.C. Sec. 1, et seq. Diamond Shamrock objected to the amendment. After Diamond Shamrock's objection to the motion to amend the complaint, nothing of significance happened for almost three years when, on June 29, 1987, the district court granted summary judgment for Diamond Shamrock. At the same time, the district court denied plaintiff's motion to modify the scheduling order, plaintiff's motion to compel discovery, plaintiff's motion under Rule 56(f) to deny or postpone summary judgment, and plaintiff's motion to file a second amended complaint. After the district court's denial of a motion to alter or amend the judgment made pursuant to Federal Rule of Civil Procedure 59(e), this timely appeal was filed.
 
 B.
 
 8
 Diamond Shamrock hired plaintiff on March 1, 1963. In February of 1980 he was transferred to Lexington and promoted to the position of comptroller of the coal unit. He was discharged effective October 31, 1982, making him fifty-three years of age at the time of his discharge.
 
 
 9
 J.W. McConnell became plaintiff's supervisor in April 1981. The relationship between plaintiff and McConnell began to decline when the two disagreed as to how certain income from the sale of property should be recorded in the company's books. According to plaintiff, McConnell "suggested" that the transaction be recorded a certain way; however, McConnell's suggestion was not permissible accounting practice. Plaintiff testified that he arrived at a solution which was acceptable to McConnell. Thereafter, McConnell was never critical of the solution but was critical of plaintiff's adamant stance on the issue. Shortly thereafter, the two men disagreed concerning plaintiff's request for additional staff and argued until approximately 10:00 p.m. over McConnell's decision.
 
 
 10
 McConnell began keeping notes concerning plaintiff Manzer's performance, and in a note dated September 15, 1981, McConnell wrote, "In summary, Ed has a problem accepting decisions contrary to his own personal strong convictions." J.A. 135. Still, on October 30, 1981, McConnell gave Manzer a "good" evaluation and allowed him to receive a salary increase. However, McConnell added that Manzer would not be promoted unless there was "a significant change in management perception of his potential." J.A. 102-03.
 
 
 11
 On December 13, 1981, McConnell noted critically plaintiff's reaction over management's decision to transfer a new clerk/receptionist into plaintiff's department. When plaintiff was deposed, he admitted to confrontations between himself and McConnell. In a note dated December 22, 1981, McConnell wrote of "[t]wo more episodes with Ed Manzer ... today." J.A. 137. The first concerned plaintiff's attempt to recruit an employee away from the Island Creek Coal Company. According to McConnell, he had spoken to plaintiff and asked him not to recruit any more persons from Island Creek Coal Company. Nevertheless, plaintiff scheduled an interview with an Island Creek employee and opposed canceling the interview arguing that his credibility with the employment agency which arranged the interview would be damaged. Plaintiff said that when he was discharged, one of the reasons given was that he "was trying to hire an Island Creek man." J.A. 68.
 
 
 12
 Robert Garbesi (McConnell's superior) was deposed and asked about the Island Creek incident. He explained:
 
 
 13
 We had hired several Island Creek employees and Island Creek officials were quite perturbed about it and complained.... So--we both have to live here in the same community and everything so, I just entirely on my own told our people that they should not recruit Island Creek personnel.
 
 
 14
 J.A. 164-65.
 
 
 15
 On or about June 24, 1982, plaintiff and McConnell discussed specific inadequacies in plaintiff's performance including (1) inaccuracy, (2) inadequate knowledge of the business, (3) attitude, (4) poor management skills, and (5) failure to set priorities. During his deposition, McConnell explained that he would not have terminated plaintiff for any one of his problems; however, the sum total of his problems made plaintiff's performance unsatisfactory.
 
 
 16
 McConnell admitted that there was an early retirement program for employees fifty-five years of age and older, but he added that the program was strictly voluntary. McConnell explained that, as he remembered, the company's reasons for the early retirement program were to allow the company to minimize the problem of duplication of positions springing from the company's recent acquisition of another coal company.
 
 
 17
 McConnell stated that the company had no bias against older employees. When plaintiff was asked whether anyone in management, specifically or generally, expressed a bias against older persons, he responded, "No." J.A. 88. However, it is plaintiff's position that the company does have a policy of eliminating older employees, and that he could have exposed this policy given ample discovery. Plaintiff believes that the reasons given for his discharge were pretextual, especially in light of his satisfactory evaluation.
 
 
 18
 The issues presented in this appeal are: (1) whether it was reversible error for the district court, after taking no action on pending motions for approximately three years, to enter summary judgment simultaneously with its (a) denial of plaintiff's motion to modify the scheduling order (entered without consulting the parties), (b) denial of plaintiff's motion to compel production of Diamond Shamrock Chemicals Company's personnel records, and (c) denial of plaintiff's rule 56(f) motion to deny or postpone summary judgment; (2) whether the district court erred in granting summary judgment on the wrongful discharge claim grounded in plaintiff's refusal to violate the rules of professional conduct for accountants; and (3) whether the district court erred in denying Manzer leave to file a second amended complaint grounded in wrongful discharge for Manzer's refusal to violate the Federal Antitrust laws.
 
 II.
 A.
 
 19
 "[I]t is well established that the scope of discovery is within the sound discretion of the trial court." Criss v. City of Kent, 867 F.2d 259, 261 (6th Cir.1988) (quoting Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir.), cert. denied, 454 U.S. 893 (1981)). Thus, discovery matters are reviewed under the abuse of discretion standard. See id. Abuse of discretion means that the appellate court is left with "a definite and firm conviction that the court below committed a clear error of judgment." Taylor v. United States Parole Comm'n, 734 F.2d 1152, 1155 (6th Cir.1984) (quoting Balani v. Immigration and Naturalization Service, 669 F.2d 1157, 1160 (6th Cir.1982)).
 
 
 20
 Normally, a grant of summary judgment is reviewed de novo. Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 109 S.Ct. 196 (1988). However, when summary judgment is granted after a request under Rule 56(f) for additional discovery, the relevant question on review is whether the trial judge abused his discretion. Glen Eden Hosp. v. Blue Cross & Blue Shield of Michigan, 740 F.2d 423, 428 (6th Cir.1984); York v. Tennessee Crushed Stone Ass'n, 684 F.2d 360, 363 (6th Cir.1982).
 
 
 21
 When a party proposes to amend its pleadings after a responsive pleading has been filed, it must be done by leave of the court, but leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "[T]he decision as to when 'justice requires' an amendment is within the discretion of the trial judge, and we review the decision under an abuse of discretion standard." Martin v. Associated Truck Lines, Inc., 801 F.2d 246, 248 (6th Cir.1986).
 
 B.
 
 22
 Plaintiff is able to point to several questionable actions by the district court. It is undisputed that the district court, without consulting the parties or their counsel, entered a scheduling order on August 14, 1984, setting a discovery deadline for approximately two months later. Federal Rule of Civil Procedure 16(b) contemplates that the district court will enter a scheduling order only "after consulting with the attorneys for the parties ... by a scheduling conference, telephone, mail, or other suitable means." Had plaintiff been given the opportunity, he could have argued that problems with obtaining the deposition of J.W. Jackson and the employee records of Diamond Shamrock Chemicals Company justified a longer period of discovery.
 
 
 23
 Ordinarily an overly restrictive discovery deadline does not create a major problem because the scheduling order may be modified by leave of the court "upon a showing of good cause." Fed.R.Civ.P. 16(b). However, when plaintiff submitted a motion to amend the scheduling order, the district court held the motion for nearly three years without ruling, thus allowing the discovery deadline to run. The district court finally denied the motion when it granted summary judgment for Diamond Shamrock.
 
 
 24
 When problems did actually develop in that Diamond Shamrock objected to the production of employee records of Diamond Shamrock Chemicals Company and its predecessor (other than those of the coal unit), and Manzer filed a motion on August 29, 1984, to compel production, the district court again held the motion without ruling on it until it entered summary judgment for Diamond Shamrock. When the district court did finally rule on the motion, it simply stated: "The court agrees that plaintiff's request is overbroad."
 
 
 25
 Faced with the inability to acquire the employment records he sought, Manzer moved under Rule 56(f) for the district court to deny the summary judgment, or in the alternative, to allow more time for discovery. In the same opinion granting the summary judgment, the district court denied the Rule 56(f) motion stating: "Inasmuch as the court is inclined to grant defendant's motion for summary judgment for the foregoing reasons, this motion will be denied."
 
 
 26
 We have stated that a party opposing summary judgment has no absolute right to additional time for discovery under Federal Rule 56(f). Emmons v. McLaughlin, 874 F.2d 3 51, 356 (6th Cir.1989). However, in Yashon v. Gregory, 737 F.2d 547, 552 (6th Cir.1984), cert. denied, 486 U.S. 1032 (1987), we found an abuse of discretion because the simultaneous sua sponte summary judgment and denial of the Rule 56(f) motion for a continuance effectively caught the plaintiff by surprise and prevented him from presenting his argument against summary judgment. Further, in Glen Eden v. Blue Cross & Blue Shield, 740 F.2d 423, 427 (6th Cir.1984), we found it was an abuse of discretion to grant summary judgment in the face of a Rule 56(f) motion where several discovery requests were pending, and the district judge gave no reasons for declining to permit further discovery. We believe that this case warrants reversal for the same reasoning set out in Yashon and Glen Eden.
 
 
 27
 Diamond Shamrock argues that even if the district court did commit some errors, none of the rulings "prejudiced Manzer or prevented him from taking proper discovery." In effect, this is an argument that we should uphold the judgment because the plaintiff was less than diligent in pursuing discovery.
 
 
 28
 Even if we perceived a lack of diligence on the plaintiff's part, which we do not, we would be hesitant to condone a trial court's actions in a case such as this by affirming the result. The Supreme Court has recognized that in some cases the integrity of the judicial system requires reversal of a judgment, though the impropriety may not have actually prejudiced the litigants before the court. Liljeberg v. Health Services Acquisition Corp., 108 S.Ct. 2194 (1988) (affirming appellate court's reversal of a judgment on the basis of a district judge's appearance of partiality). We believe that similar considerations apply in a case like this where the district judge enters a scheduling order without consulting the parties; holds a motion to amend the scheduling order, a motion to compel discovery, and a motion to postpone summary judgment pending further discovery for nearly three years without ruling; then simultaneously grants summary judgment and denies the motions with little or no explanation of its reasons.
 
 
 29
 Thus, we do not reach the merits of the various motions, nor do we express an opinion as to the merits of the age discrimination claims. Our holding is that given the liberality with which discovery is normally allowed and the scant explanation given by the district judge, it was an abuse of discretion to grant summary judgment on the age discrimination claims simultaneously with the denial of the related discovery motions which had been pending for nearly three years. However, since the plaintiff points to no connection between the requested discovery and the wrongful discharge claims, we will consider those claims separately based on the evidence present in the record at the time of the summary judgment.
 
 C.
 
 30
 Plaintiff also alleged that he was discharged for his refusal to violate the professional code of ethics for accountants in regard to recording the sale of certain property in the company books. Kentucky makes an exception to the discharge-at-will doctrine where an employee is fired for exercising a right or refusing to violate a law; however, the discharge must be contrary to well-defined public policy which is evidenced by a statutory or constitutional provision. Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky.1985).
 
 
 31
 The record shows that plaintiff's superior "suggested" that the transaction be recorded in a certain way. Plaintiff opposed the suggestion and arrived at a solution which was accepted and never criticized. The only criticism was in regard to the plaintiff's "adamant stance." While this record would allow a reasonable juror to infer that a reason for plaintiff's discharge was his inflexibility, it does not allow the inference that the "reason for the discharge ... was the failure or refusal to violate a law." Grzyb, 700 S.W.2d at 402 (quoting Suchodolski v. Michigan Consolidated Gas Co., 412 Mich. 692, ----, 316 N.W.2d 710, 711 (1982) (per curiam)).
 
 
 32
 Moreover, if the "suggested" action was impermissible, but the acceptable solution was permissible, the line between violating the law and not violating it must be too dim to provide the "clearly defined" public policy that Kentucky protects. See id. Thus, we hold that summary judgment was justified on the claim grounded in wrongful discharge for failure to violate ethical standards.
 
 D.
 
 33
 Finally, plaintiff challenges the district court's refusal to allow him to amend his complaint a second time to add a claim for wrongful discharge for refusal to violate the Sherman Antitrust Act. The Act forbids a contract, combination or conspiracy in restraint of trade. 15 U.S.C. Sec. 1. Plaintiff argues that this is a clear statutory statement of public policy which would give rise to an action in Kentucky for wrongful discharge.
 
 
 34
 The problem is that the facts as alleged do not amount to a Sherman Act violation. The proposed second amended complaint alleged a contract, combination or conspiracy between Diamond Shamrock and Island Creek Coal Company "whereby it was agreed that [Diamond Shamrock] would cease recruiting Island Creek personnel as employees." There was no allegation that Island Creek agreed to reciprocate.
 
 
 35
 The cases plaintiff cites in support of his claim involved reciprocal agreements among a group of employers not to raid each others' employees or hire blacklisted employees. See Radovich v. NFL, 352 U.S. 445 (1957); Quinonez v. National Ass'n of Security Dealers, 540 F.2d 824 (5th Cir.1976). The heart of a Sherman Act violation is "concerted action; unilateral conduct is not sufficient." Stratmore v. Goodbody, 866 F.2d 189, 191-92 (6th Cir.), cert. denied, 109 S.Ct. 2065 (1989). Since there is no allegation that Island Creek agreed to do anything or refrain from doing anything, the claim is defective. See Michigan State Podiatry Ass'n v. Blue Cross & Blue Shield, 671 F.Supp. 1139, 1147 (E.D.Mich.1987) (defining concerted action as an agreement to act together).
 
 
 36
 Even if the second amended complaint technically stated a claim, there is no evidence to dispute the testimony of Robert Garbesi that he acted voluntarily in ordering no more hiring of Island Creek personnel after Island Creek officials telephoned him "quite perturbed." This unilateral action is not enough to support the claim. The district court, within its discretion, may refuse to allow an amendment which is futile. See Foman v. Davis, 371 U.S. 178, 182 (1962); Collyard v. Washington Capitals, 477 F.Supp. 1247, 1249 (D.Minn.1979).
 
 III.
 
 37
 Accordingly, for the reasons stated, the summary judgment of the district court is AFFIRMED as to the wrongful discharge claims; however, the summary judgment for Diamond Shamrock on the issue of age discrimination and violation of the ADEA and Kentucky law is REVERSED AND REMANDED for further proceedings. The district court is directed to reconsider the motion to compel production of the employee records plaintiff seeks, and is also directed to grant a reasonable period of additional time for discovery based upon the discoverable material plaintiff can identify for the court.
 
 
 
 [1]
 At the time of the events underlying this action, Manzer worked for what was referred to as the "coal unit," an unincorporated division of Diamond Shamrock Corporation. In 1983 the coal unit became Diamond Shamrock Coal Company and Diamond Shamrock Corporation became Diamond Shamrock Chemicals Company. By agreement, Diamond Shamrock Chemicals Company became the defendant in this action in place of Diamond Shamrock Corporation. Apparently Diamond Shamrock Corporation still exists as the parent company of Diamond Shamrock Chemicals Company