991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joe L. WADE, Davie J. Watts, and Ralph L. Williams,
Plaintiffs-Appellants,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, Teamster
Freight Employees Local Union No. 480, and the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, AFL-CIO, Defendants-Appellees.
 No. 92-5405.
 United States Court of Appeals, Sixth Circuit.
 Feb. 18, 1993.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiffs, non-permanent truck drivers employed by Consolidated Freightways ("CF"), sued CF and the truckers' union, alleging that CF had improperly denied them permanent positions and that the union had improperly failed to represent them. The district court granted defendants' Rule 12(b)(6) motion, Fed.R.Civ.P., and dismissed the action. Plaintiffs appealed, and we affirm.
 
 
 2
 * Plaintiffs were over-the-road ("OTR") casuals for Consolidated Freightways, a trucking concern. Casuals are temporary drivers, and are classified as either replacement or supplemental. Replacement casuals are drivers used to fill in when regular drivers are absent. Supplemental casuals are drivers used when the company needs additional drivers in its fleet to meet temporary work demands, but does not expect to have permanent work for them.
 
 
 3
 The terms and conditions of the truckers' employment were governed by a nationwide multi-employer Master Freight Agreement, supplemented by a multi-employer agreement that covered a nine-state territory known as the Southern Conference Area. The two documents constitute the collective bargaining agreement ("CBA").
 
 
 4
 On May 16, 1991, plaintiffs filed a complaint under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against CF, Teamsters Freight Employees Local Union 480 ("Local 480") and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("IBT"), charging that CF had violated the CBA because it had failed to hire plaintiffs as regular employees, failed to add them to the preferential casual list (which they claim would have made them next in line to be hired as regular employees) and/or hired OTR drivers other than themselves as regular employees. Plaintiffs also claimed that Local 480 was their bargaining agent and owed them a duty of representation but had failed to require CF to comply with the terms of the agreement and had failed to advance their complaint as a grievance.
 
 
 5
 Local 480 filed a motion under Rule 12(b)(6), Fed.R.Civ.P., alleging that plaintiffs had failed to show a breach of the CBA. Because there was no breach, there was no action the union should have taken, therefore there was no set of facts on which plaintiffs were entitled to relief. The trial court granted the motion and dismissed the complaint.
 
 
 6
 On December 12, 1991, CF filed a similar motion making essentially the same arguments as had Local 480. Plaintiffs' only response was to file a motion ten days later for leave to file an amended complaint. The district court denied plaintiffs' motion on January 24, 1992, because it merely restated arguments previously raised and rejected. The district court also noted that no response was filed to CF's Rule 12(b)(6) motion. The court found in CF's favor and dismissed the complaint.
 
 
 7
 On March 13, 1992, plaintiffs stipulated to the dismissal of the remaining defendant, IBT, making the action final and ripe for appeal.[1] Plaintiffs at no time moved for reconsideration of the district court's decision.
 
 II
 
 8
 In ruling on a 12(b)(6) motion to dismiss, the court does not consider material supplementary to the pleadings. Statements made in the pleadings must be taken as true. If supplementary material is relied upon, the motion must be treated as a summary judgment motion under Rule 56, Fed.R.Civ.P.
 
 
 9
 In this case, plaintiffs are seeking a construction of the CBA that will allow them to accrue seniority and employment rights. To that end, they have made bold assertions in the pleadings, not supported by the CBA, and therefore not susceptible of proof. Wishful thinking, embodied in pleadings, does not create facts.
 
 
 10
 The trial court must examine the pleadings, including the relevant contract provisions, and determine whether the CBA is ambiguous. The decision as to whether the CBA is ambiguous, and therefore open to parole or supplementary evidence, is a question of law. See Marentette v. UAW Local 174, 907 F.2d 603, 612 (6th Cir.1990). That decision does not require the trial court to go beyond the pleadings to affidavits or similar supplementary material, but rather, only requires the court to read the contract. In this case, the plain language of the CBA is, as a matter of law, so clear that external interpretive evidence is not required.
 
 
 11
 Plaintiffs advance an interpretation that is substantially at variance from the plain wording of the CBA. The contract simply does not provide plaintiffs the rights they now seek. The National Master Freight Agreement consists of articles 1 through 39. The Supplemental Agreement (Southern Conference Area Over-the-Road Motor Freight Supplemental Agreement) starts with article 40. They are of a piece, and intended to be read together. Article 3, § 2(b) defines casuals, and categorizes them as supplemental or replacement. Section 2(b)(1) states: "Casuals shall not have seniority status. Casuals shall not be discriminated against for future employment." The union reasonably argued, and we agree, that this means that casuals do not accrue seniority.
 
 
 12
 Article 40, § 3 states in part: "Supplemental casuals, who work thirty (30) tours of duty within two (2) consecutive calendar months shall qualify an employee to be added to the regular seniority roster." If any casual were to accrue any sort of seniority or selection rights it would only be a supplemental, and not a replacement casual. Furthermore, the language says "an" employee rather than "the" employee, meaning that the employee selected is not necessarily the supplemental who worked. The number of tours worked by supplemental casuals is used only to determine when the employer is required to add another person to the permanent roster, it does not vest rights in employment with any particular casual.
 
 
 13
 The union's interest is in creating additional positions, but not necessarily in vesting the rights to a particular position in a particular employee. Furthermore, a permanent job is created after the employer uses supplemental casuals for a certain number of tours. Thus, the right to the job could not vest in any particular person because a single job could be created by several truckers working in parallel.
 
 
 14
 The existence of the category of preferential casuals further undermines plaintiffs' argument. Preferential casuals are defined in Article 40, § 4, which notes that when a casual is used by the employer for a particular period of time, the employer shall process a person to be placed on the preferential list when requested to do so by the local. Furthermore, the employer has the right to select the individual to be hired. This reinforces the notion that the union's objective is to increase its membership, but not necessarily by hiring any particular person.
 
 
 15
 A driver hired from the preferential casual list does not have to undergo a probationary period if hired as a regular. Since that procedure increases the exposure of the company, one can imagine that the company would not be willing to waive the probationary period without substantial input in selecting the driver. Thus, even the union's recommendation of a particular casual does not ensure that casual's employment.
 
 
 16
 Plaintiffs offered affidavits tending to show that the CBA has been modified by practice, in a way arguably consistent with their interpretation, in some locations within the Southern Conference Area, but excluding Nashville. They are seeking to bind CF to voluntary behavior by other trucking firms. However, the contract clearly states that it cannot be modified by supplementary agreements or practices. Article 6, § 1(c) states: "No other employer shall be bound by the voluntary acts of another Employer when he may exceed the terms of this Agreement." No matter how much evidence plaintiffs can gather concerning the behavior of any other employer, either in or outside of the Nashville or Southern Conference Area, it does not, and cannot, bear on CF's responsibilities under the CBA.
 
 III
 
 17
 Plaintiffs also contend that they should have been allowed to amend their pleadings, at which time they would have produced yet more affidavits. Because the district court's refusal to allow plaintiffs to amend their pleadings was based on a legal conclusion that the amended pleadings would not withstand a motion to dismiss, this court reviews the legal conclusion de novo. Martin v. Associated Truck Lines, Inc., 801 F.2d 246, 248-49 (6th Cir.1986). However, the district court was correct in stating that the proposed amendments merely restated the allegations in the original pleadings. Thus, an increase in the quantity or quality of the affidavits could not help plaintiffs as it still would not modify the CBA. The district court's refusal to allow amended pleadings was appropriate.
 
 
 18
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Plaintiffs are not proceeding against IBT, and IBT is not a party to this appeal