106 F.3d 401
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John N. MEURY, Plaintiff-Appellant,
v.
CONNIE KALITTA SERVICES/AMERICAN INTERNATIONAL AIRWAYS,
INC., Defendant-Appellee.
 No. 96-1220.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1997.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 94-73206; Avern Cohn, District Judge.
 E.D.Mich.
 REVERSED.
 Before: LIVELY, NELSON, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment for the defendant in a Michigan wrongful discharge action brought in federal court on diversity grounds. Because we conclude that the record presents genuine issues of material fact, we shall reverse the judgment and remand the case for further proceedings.
 
 
 2
 * The plaintiff, John N. Meury, was employed as a flight captain by the defendant, Connie Kalitta Services/American International Airways, Inc. The employment relationship appears to have been marked by at least two ongoing sources of friction.
 
 
 3
 First, Mr. Meury alleges that he repeatedly complained to American International about violations of FAA safety regulations. These complaints, which spanned a two-year period before the discharge, are said to have involved the safety of American International's equipment, flight planning, radio operations, and the performance of Mr. Meury's fellow crew members.
 
 
 4
 On one occasion, approximately a year before he was discharged, Mr. Meury refused to fly an American International plane because of a crack in the windshield. Mr. Meury alleges that in retaliation for this refusal to fly, American International placed him on "hot standby" status for three days. (This meant that he was required to remain available by telephone twenty-four hours a day.)
 
 
 5
 On August 10, 1992, approximately one week before his discharge, there was a conversation between Mr. Meury and Dale O'Brien, an American International "check airman" and flight engineer. Meury allegedly told O'Brien that American International crews in Miami were being asked to follow procedures that violated FAA safety regulations. Mr. O'Brien was supposed to have said that either the Miami crews would follow the company procedures or they would be fired. Mr. Meury took this to be a threat to his job, since he had also told O'Brien that he (Meury) was experiencing the same problems as the Miami crews.
 
 
 6
 A second ongoing source of tension appears to have been a "call-in" procedure under which flight crew members were required to telephone American International's headquarters three times before a scheduled flight: once on the day before the flight, once on the day of the flight (to report on arrangements for travel to the aircraft departure point), and once when the crewmember reached the departure point. There is evidence that some crewmembers did not follow the call-in policy to the letter; Mr. Meury was among them.
 
 
 7
 American International maintains that Mr. Meury was discharged for failing to follow the call-in procedure in connection with a flight scheduled to depart from Toledo, Ohio, on August 15, 1992. As a result of his failure to call in for the August 15 flight, the company says, it was forced to dispatch a back-up pilot, Thomas Phelps, at one o'clock in the morning. Mr. Phelps drove from Southfield, Michigan, to the outskirts of Toledo before he was called back because Mr. Meury had shown up in Toledo ready to fly. Mr. Meury denies that he committed any substantial violation of the call-in procedure on this occasion.
 
 II
 
 8
 It is undisputed that Mr. Meury was employed on an at-will basis. Generally speaking, therefore, he was subject to dismissal at any time, for any reason or for no reason. Michigan recognizes a "public policy" exception, however, under which an at-will employee may not be discharged for "failure or refusal to violate a law in the course of employment." See Suchodolski v. Michigan Consol. Gas Co., 412 Mich. 692, 695, 316 N.W.2d 710, 711 (1982).
 
 
 9
 The district court concluded that Mr. Meury could not establish the factual predicates necessary for recovery under Suchodolski. The court's analysis was guided by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a case arising under Title VII of the Civil Rights Act of 1964. The lesson the district court drew from McDonnell Douglas was that once the plaintiff has "asserted a claim of wrongful termination the court looks to whether [American International's] justification for Meury's discharge was legitimate, and if so, whether the justification was a pretext for discrimination." The court went on to find that American International had in fact asserted a legitimate basis for discharging Mr. Meury, and that Mr. Meury had failed to show that the stated reason was a mere pretext. In this connection the court held it to be dispositive that Mr. Meury had not shown that similarly situated employees were treated differently.
 
 
 10
 Assuming, arguendo, that the pertinent Michigan law tracks federal employment discrimination law, we do not read McDonnell Douglas as teaching that a reference to similarly situated employees is the only way in which an employee may demonstrate pretext. The McDonnell Douglas Court discussed a number of factors that may be relevant to a showing of pretext, including how the employee was treated during his tenure, the employer's reactions to the employee's activities, and the employer's general policies with respect to persons in the employee's position. Id. at 804-05. The Supreme Court concluded that the employee "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup...." Id. at 805. McDonnell Douglas does not suggest to us that in the case at bar the absence of noncomplaining employees whose situation was otherwise similar to Mr. Meury's was a sufficient basis for granting summary judgment to American International.
 
 
 11
 We are aware of no cases, moreover, in which a Michigan court of record has expressly looked to Title VII jurisprudence for guidance in the application of Michigan's public policy exception to the at-will doctrine. There is at least one case, however, in which a Michigan court expressly declined to apply Title VII law in a situation comparable to this one. See Kocenda v. Detroit Edison Co., 139 Mich.App. 721, 363 N.W.2d 20 (1984). There the plaintiff's employer retaliated against him for filing a complaint with the Michigan Civil Rights Commission. The court decided that "where the evidence of retaliation is fairly strong if believed ... the alternating burden 'pretext' approach need not be used.... Plaintiff need only establish a causal link between participation in the protected activity and the adverse employment treatment complained of." Id. at 22.
 
 
 12
 We think that a Michigan court would let Mr. Meury try to show a "casual link" between his discharge and his safety complaints by whatever competent and relevant evidence he might be able to muster. That being so, the question confronting us is this: Has Mr. Meury demonstrated the existence of a genuine issue as to whether "the reason for the discharge ... was the failure or refusal to violate a law"? Manzer v. Diamond Shamrock Chemicals Co., No. 89-6315, 1990 WL 92630 (6th Cir. July 3, 1990) (unpublished).
 
 
 13
 We believe that Mr. Meury made such a demonstration. A jury might reasonably be suspicious about the timing of the discharge, first of all. One week after Mr. O'Brien allegedly warned Mr. Meury that he would lose his job for failing to follow procedures that violated FAA safety regulations, Mr. Meury was fired. American International alleges that over the course of his tenure, Mr. Meury continually flouted the call-in procedure. Assuming this is true--and Meury disputes the point--a juror could reasonably wonder why, after five and one half years, failure to follow the call-in procedure precipitated a discharge only one week after the alleged warning about blowing the whistle on safety rule violations.
 
 
 14
 Although a plaintiff may not rely exclusively on the timing of his discharge to establish a violation of Michigan's public policy principle, Mr. Meury does not do so. His affidavit states that he followed the substance of the call-in procedure on the dates in question, and he points to deposition testimony indicating that the call-in procedure was not followed slavishly by others. For example, pilot Mark Schmidt testified that he did not always call in on days he was scheduled to fly, and yet had never been criticized in this regard. James LeTarte, chief crew scheduler for the relevant time period, testified that he knew of no other pilots who had been fired for failing to call in. Mr. LeTarte seems to have been surprised that Mr. Meury was discharged for this reason.
 
 
 15
 The judgment is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.